FILED

2003 DEC -3  A 10: 41

UNITED STATES DISTRICTR COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORGE L. DUPREY<br>　　　Plaintiff, | :<br>:<br>: Civil No. 301CV2278(SRU) |
| VS. | :<br>: |
| ONESOURCE FACILITY SERVICES, INC.<br>AND NANCY MURRAY,<br>　　　Defendants, | :<br>: October 6, 2003<br>: |

## AFFIDAVIT OF JORGE DUPREY

I, Jorge Duprey, being first duly sworn, hereby depose and state as follows:

1.　　I am over the age of 18 and believe in the obligations of an oath.

2.　　I was employed by OneSource in various positions, including as a porter and an audio visual assistant at the State Capitol and Legislative Office Building.

3.　　I began working at the Connecticut State Capitol in 1987, and in 1993 I was promoted to a position in the light department and later that same year I was additionally assigned to duties as an audio visual assistant without any additional compensation.

4.　　On or about July 1, 1999, OneSource assumed the maintenance contract for the State Capitol and Legislative Office Building, I became an employee of OneSource, and I was assigned duties as the audio visual assistant, handyman, light department worker and electrical assistant without any additional compensation.

5.　　During the time that I have been employed at the State Capitol and Legislative Office Building, I have been a member of either Local 531 or Local 32BJ of the Service Employees International Union.

1

6.	While I was on the day shift, my immediate supervisor was Nancy Murray.

7.	OneSource wrongfully terminated my employment in March 2001 in retaliation for complaints and grievances that I filed because of the harassing, discriminatory and retaliatory treatment that I was subjected to by Nancy Murray and OneSource, and a subsequent arbitration award found that my termination, even if for reasons purported by OneSource, constituted more severe discipline than that which other employees received for the same or substantially similar conduct. I returned to work on July 6, 2001.

8.	On February 23, 2001, I wrote a note to Nancy Murray indicating that I needed to go to Puerto Rico for about 11 days, from February 25, 2001 until the first week in March, for a personal matter, and I provided a copy of this note to my union representative. Nancy Murray returned the note with her handwriting on it stating that she needed to know how I wanted to treat this time off, e.g. personal, vacation, leave of absence, etc. Because of the frequent problems that I have had with Nancy Murray, I was not confident that Nancy Murray would approve my request for time off, consequently, I discussed the matter with my union representative, Juan Hernandez, who informed me that he had raised the issue with Pat McKinley, Vice President of OneSource, and that Pat McKinley said that it was OK for me to go to Puerto Rico.

9.	Prior to my reinstatement to my job and my return to work, my co-worker, William Varona, was encouraged to apply for the audio visual assistant position, and he was told not to worry about any R4 license requirement because Nancy Murray will be flexible with him by permitting him to go to school for the license while he worked in the position.

10.     Upon my return to work, I was informed that Local 30 was now responsible for the audio visual position and that the person who became assigned to the audio visual assistant position was requested to have an R4 license, and consequently, I was assigned to a porter position rather than the audio visual assistant position from which I was wrongfully terminated.

11.     In January 2001, realizing that I was in a different union than all of my audio visual and electrical co-workers, I had attempted to transfer my union membership to Local 30, and in July 2001, I attempted to apply for an R4 license with the Connecticut Department of Consumer Protection.

12.     The application for an R4 license required the signature of the person who supervised my work, but when I presented it to Nancy Murray, she first refused to sign it and then reluctantly signed it when I indicated that I would take it to Steve Militariu.

13.     Within days thereafter, the audio visual assistant position was posted again, this time with a V2 license preferred.

14.     Kevin Breault worked as the audio visual engineer and although the 2001 job posting and job description for that position specifically stated that the person filling it should have a V1 license, Kevin Breault never possessed a V1 license until approximately August 2002.

15.     The job posting for the electrical apprentice position specified the completion of a vocational school course, but a white female whose name I believe is Maureen Burris was hired for the electrical apprentice position even though she did not complete the vocational school course specified in the job posting.

16. During the period from 1999 through 2002, I was entitled to three weeks vacation per year, however, although I requested specific weeks for my vacation, I was never granted the specific weeks that I requested.

17. In 2000, Nancy Murray denied my request for a specific period of time for my vacation and instead intentionally assigned me to a period for vacation that would conflict with the vocational school course that I would have to complete in order to work as an Electrical Apprentice.

18. While OneSource employees routinely speak Spanish among themselves throughout the workday and throughout the workplace, Nancy Murray has made it clear to most, if not all of the Spanish speaking employees that she does not appreciate them speaking Spanish during the workday, and consequently, most, if not all of the Spanish speaking employees of OneSource are intimidated by her negative attitude and will refrain from speaking Spanish as soon as she comes around.

19. One day Ricardo Quiroz and I were in Nancy Murray's office, while we were waiting for Nancy Murray to address us, I was casually speaking to Ricardo in Spanish when Nancy Murray admonished us for speaking Spanish and angrily asked us to leave her office.

20. On another day, some Spanish speaking OneSource employees were outside of Nancy Murray's office attempting to assist a couple of Spanish speaking job applicants understand the questions on the OneSource employment application when Nancy Murray's secretary, Karen Hansen, in a loud voice and in profane language demanded that we leave her area if we had to speak Spanish rather than English.

21. Sharon Farrelly, a white female and former painter/taper of OneSource told me that on the day in March 2001 that Nancy Murray wrongfully terminated my employment, Nancy Murray came up the stairs telling an ethnic joke that was derogatory to black people and Sharon Farrelly said that upon hearing Nancy Murray's joke she immediately walked away from Nancy Murray.

22. Sharon Farrelly also told me that this was not the first time that Nancy Murray had told such jokes and that she has heard Nancy Murray use derogatory terms in referring to blacks and Hispanics.

23. The severe scrutiny to which I was subjected, the harsh and hostile manner in which I was spoken to, the attempted terminations of my employment, my assignment to the more menial, lesser paying porter's position rather than the audio visual assistant's position upon my return to work after having been wrongfully terminated, the manipulation of job descriptions and job postings to disqualify me from job advancement and the difference between how other employees were hired, disciplined and promoted as compared to me created such a level of discomfort for me that it made it unreasonably difficult for me to perform the tasks, duties, responsibilities and assignments of my job.

_____
Jorge Duprey

Signed and sworn to before me
this 6th day of October 2003

_____
Commissioner of Superior Court/Notary Public

FOYE A. SMITH
NOTARY PUBLIC
MY COMMISSION EXPIRES 9/30/2007